United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| JOHN TAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| EMILY HOLMES, ET AL., | ) | 16-11837-NMG |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**Gorton, J.**

This case arises out of a dispute concerning the treatment of plaintiff's health problems in a Massachusetts correctional facility. The <u>pro se</u> plaintiff, John Tague, claims that, during his incarceration at Old Colony Correctional Center in Bridgewater, Massachusetts, healthcare personnel failed to provide him with satisfactory medical care in violation of 1) Article 26 of the Massachusetts Declaration of Rights through the Massachusetts Civil Rights Act ("the MCRA"), M.G.L. c. 12 § 11H and 11I and 2) the Eighth Amendment to the United States Constitution through 42 U.S.C. § 1983. Plaintiff also alleges that defendants threatened and intimated him in violation of the MCRA.

The following motions are pending before the Court:

1) Plaintiff's motion to remand (Docket No. 10),

2) Plaintiff's motion to amend his motion to remand (Docket No. 24),

3) Plaintiff's motion to amend his complaint (Docket No. 23),

4) Plaintiff's motion to appoint counsel (Docket No. 56),

5) Plaintiff's motion to clarify the jurisdictional statement (Docket No. 13),

6) Defendants' motion to dismiss (Docket No. 16) and

7) Plaintiff's motion to allow service to be considered complete (Docket No. 25).

I. **Background**

The pro se plaintiff, John Tague, is serving a life sentence in a Massachusetts correctional facility and is currently incarcerated at Souza-Baranowski Correctional Center in Shirley, Massachusetts. During the events at issue, he was incarcerated at Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts.

Defendants are various employees of the Massachusetts Partnership for Correctional Health ("MPCH"), a private contractor that provides health services to inmates in the custody of the Massachusetts Department of Correction. Defendant Khiem Tran is a medical doctor, defendants Paul Caratazzola and Emily Holmes are Health Services Administrators and defendant Linda Farag is the Grievance and Appeals Coordinator.

During his incarceration, plaintiff was diagnosed with Charcot-Marie-Tooth disease, a progressive neurological disorder that eventually incapacitates the body's extremities and spinal column and often results in foot deformities and mobility issues. Plaintiff submits that, due to that disease, he has high arches, claw toes and requires a wheelchair, although he is occasionally able to use a walker.

Plaintiff claims that numerous physicians, including Drs. Enau, Angel and Hameed, and nurse practitioner Linda Rosa have prescribed narcotics, such as morphine, methadone, klonopin and gabapentin, for the pain that results from his condition. According to plaintiff, those healthcare providers ruled out pain killers such as Tylenol and ibuprofen because they are ineffective. His morphine prescription was last renewed by Dr. Hameed in September, 2015.

In October, 2015, Dr. Khiem Tran began treating plaintiff. Dr. Tran reduced plaintiff's morphine use and then used a tapering schedule to end it altogether. As of January, 2016, plaintiff's pain was being treated with amitriptyline (a nerve pain medication), carbamazepine (a nerve pain medication), baclofen (a muscle relaxer) and acetaminophen (a pain medication). Three months later, Dr. Tran prescribed tegretol (a nerve pain medication), amitriptyline (a nerve pain

medication), Tylenol and indomethacin (a pain medication) to treat plaintiff's pain.

After his morphine prescription was terminated, plaintiff filed a grievance with MPCH in October, 2015 and defendant Caratazzola responded one month later.  Plaintiff appealed the denial of his grievance and alleges that defendant Farag disposed of his appeal in an improper manner

> by slyly merging a letter Tague wrote to her of only one page AFTER he submitted his appeal, and his grievance appeal.

Plaintiff avers that all four defendants colluded to deprive him of pain medication and then "muddied the water to confuse anyone investigating".

Plaintiff also alleges that, at about the same time that his morphine prescription ended, volumes one and two of his medical records disappeared.  He filed a medical grievance in an attempt to locate his records but defendants Holmes and Farag ruled that the loss of the files was "non grievable".

In January, 2016, plaintiff was sent to consult with Dr. David Thaler, a neurologist at Tufts Medical Center.  Plaintiff alleges that the visit was a result of defendants' "effort to get a specialist to corroborate their sadistic plan" and that defendants purposely withheld his lost files from Dr. Thaler.  In the medical record from the visit, Dr. Thaler noted that plaintiff believes that he has Charcot-Marie-Tooth disease but

stated that the correct diagnosis is chronic, progressive spastic quadriparesis. Dr. Thaler also observed that plaintiff has "a sincere pain syndrome" and that "he needs pain management". Although Dr. Thaler stated that he has "no objection to [plaintiff] using morphine and/or gabapentin", he did not specifically recommend those drugs.

According to plaintiff, in February, 2016, because of his untreated pain, he attempted suicide. In April of that year, plaintiff claims that Dr. Tran colluded with the other defendants to deprive him of his wheelchair. The complaint states that, at plaintiff's request, his wheelchair was returned.

In September, 2016, plaintiff filed suit in Plymouth Superior Court alleging that defendants violated 1) Article 26 of the Massachusetts Declaration of Rights through the MCRA, M.G.L. c. 12 § 11H and 11I and 2) the Eighth Amendment of the United States Constitution through 42 U.S.C. § 1983. Plaintiff further claims that defendants violated the MCRA by threatening, intimidating and attempting to coerce him. He seeks a declaratory judgment that defendants have violated his state and federal constitutional rights by subjecting him to cruel and unusual punishment under M.G.L. c. 231A, injunctive relief and damages.

That same month, defendants removed the case to this Court based upon the 42 U.S.C. § 1983 claim and plaintiff responded with a motion to remand and a motion to clarify the jurisdictional statement. In October, 2016, defendants filed a motion to dismiss. Shortly thereafter, plaintiff filed motions to amend the complaint, to amend his motion to remand and to allow service to be considered complete. In June, 2017, plaintiff filed a motion to have counsel appointed on his behalf.

The pending motions are the subject of this memorandum and order and, for the reasons that follow, the motions to remand, to amend the motion to remand, to amend the complaint and to appoint counsel will be denied; the motion to clarify and to dismiss will be allowed and the motion to consider service completed will be denied as moot.

## II. **Plaintiff's Motions to Remand, to Amend his Motion to Remand and to Amend his Complaint**

This Court agrees with defendants that plaintiffs' motion to remand is unavailing. Plaintiff contends that remand is proper because the majority of his claims involve state law and broader relief is available in state court. The First Circuit Court of Appeals ("First Circuit") has determined, however, that if a plaintiff asserts a federal claim,

> [i]t is immaterial that a claimant in retrospect views her federal claims as surplus, or after removal, moves to strike the federal claims. The plaintiff is the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 36 (1st Cir. 2013) (internal citations and quotations omitted).

Plaintiff attempts to avoid the Ortiz-Bonilla holding by asserting that the First Circuit did, in fact, remand one of the two cases addressed in Ortiz-Bonilla. In so arguing, plaintiff ignores the fact that, in the case that the First Circuit remanded, the plaintiff had filed a second complaint in state court that "expressly waived any federal claims." Id. at 38. Because plaintiff has not filed a new case in state court expressly waiving his federal claims, remand is improper.

Plaintiff also moves to amend his motion to remand and to amend his complaint "[t]o cure the slight jurisdictional defect", i.e. remove his federal claim. Allowing plaintiff to strike his federal claim from the complaint to defeat removal is precisely what the Ortiz-Bonilla Court found to be improper. Accordingly, plaintiff's motions to remand, to amend his motion to remand and to amend the complaint will be denied.

### III. Plaintiff's Motion to Appoint Counsel

Because there is no constitutional right to counsel in a civil case and the exceptional circumstances that warrant the

-7-

appointment of counsel are not present here, the motion to appoint counsel will be denied. King v. Greenblatt, 149 F.3d 9, 14 (1st Cir. 1998).

**IV.  Plaintiff's Motion to Clarify Jurisdictional Statement**

Plaintiff moves to clarify that when he stated "MGL c 12 section I, and H" he meant to describe the MCRA, specifically, "MGL c 12 section 11(I) and 11(H)".  That motion is allowed. Under M.G.L. c. § 11I, an individual may file a suit alleging a violation of his constitutional rights which is what plaintiff has done in this case.  M.G.L. c. § 11H permits the Attorney General to file a claim with respect to an individual's constitutional rights and thus it does not apply to this case. Accordingly, the Court will only consider M.G.L. c. § 11I in its analysis.

**V.  Defendants' Motion to Dismiss**

   **A. Legal Standard**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the

reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### B. Eighth Amendment and Article 26 Claims

Plaintiff claims that defendants have been deliberately indifferent to his serious medical condition in violation of Article 26 of the Massachusetts Declaration of Rights through M.G.L. c. 12, § 11I and the Eighth Amendment through 42 U.S.C. § 1983.  Defendants move to dismiss both of those claims.

#### 1. Deliberate Indifference

Article 26 of the Massachusetts Declaration of rights prohibits cruel or unusual punishment. Mass. Const. Pt. 1, Art. 26.  The protections enshrined in Article 26 "are at least equally as broad as those guaranteed under the Eighth Amendment." Torres v. Comm'r of Correction, 695 N.E.2d 200, 204

(Mass. 1998) (quoting Michaud v. Sheriff of Essex County, 458 N.E.2d 702, 708 (Mass. 1983)). To succeed on an Article 26 claim, a plaintiff must demonstrate that the defendants acted with deliberate indifference. See 'Abdullah v. Sec'y of Pub. Safety, 677 N.E.2d 689, 694 (Mass. App. Ct. 1997). Specifically, a plaintiff must show

> (1) a condition or situation which poses a substantial risk of serious harm; and (2) facts establishing that a prison official has knowledge of the situation and ignores it.

Torres, 695 N.E.2d at 204 (quoting Good v. Commissioner of Correction, 629 N.E.2d 1321, 1325 (Mass. 1994)) (internal quotations omitted).

The Article 26 standard is "virtually identical" to the Eighth Amendment standard. See Cryer v. Spencer, No. 11-cv-10654-DJC, 2012 WL 892883, at *7 (D. Mass. Mar. 15, 2012)(collecting cases); see also Hennessy v. Dennehy, No. 08-cv-11724-NG, 2010 WL 3464234, at *10 (D. Mass. Sept. 1, 2010) ("It appears that the Eighth Amendment's 'deliberate indifference' standard applies with equal force to claims under article 26."); Carter v. Symmes, No. 06-cv-10273-PBS, 2008 WL 341640, at *5, n.3 (D. Mass. Feb. 4, 2008) ("Because Article 26 and the Eighth Amendment guarantee essentially the same scope of rights, there is no need for separate analyses.").

### 2. Application

Plaintiff has failed plausibly to allege the deliberate indifference required for a claim pursuant to Article 26 and the Eighth Amendment. For the purposes of the motion to dismiss, defendants do not dispute that plaintiff has a serious medical condition and thus the first prong of the deliberate indifference test is met.

With respect to the second prong, however, there is no allegation that defendants have ignored plaintiff's serious medical condition. On the contrary, exhibits attached to the complaint show that Dr. Tran has treated his pain with the numerous medications listed above. Moreover, plaintiff was taken to see a neurologist, Dr. Thaler, for a consult on his condition. While Dr. Thaler stated that plaintiff's pain symptoms should be treated and that he did not object to treatment through morphine and gabapentin, he did not state that those specific medications were necessary.

With respect to the other three defendants, Holmes, Farag and Caratazzola, even assuming that they have been directly involved in plaintiff's medical care, plaintiff has failed to state a claim upon which relief can be granted. Although plaintiff states that defendants colluded to deprive him of his medication and prevent his grievances, he provides no plausible allegation that they did any such thing. Instead, his complaint

shows that he has been treated with pain medications, albeit not the specific drugs he requests, and that defendants have responded to his grievances. Furthermore, plaintiff alleges no facts that support his conclusory allegation that defendants purposefully lost his medical records.

This Court will not substitute its judgment for that of a medical doctor with respect to treatment decisions. Because plaintiff has failed plausibly to allege that defendants are ignoring his medical condition, the motion to dismiss his deliberate indifference claims will be allowed.

### C. Purported Threats, Intimidation and Coercion

Plaintiff also asserts that "defendants us[ed] officers to enforce their sadistic orders [through] 'threats and intimidation[]'" in violation of the MCRA, M.G.L. c. 12 § 11H. Specifically, plaintiff suggests that defendants used threats and intimidation to deprive him of his wheelchair.

> A defendant violates the Massachusetts Civil Right Act if (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do.

Comeau v. Town of Webster, Mass., 881 F. Supp. 2d 177, 189 (D. Mass. 2012). There is no plausible allegation that defendants threatened or intimidated plaintiff in order to cause him to give up a constitutional right. An exhibit attached to the complaint states that plaintiff "wanted to try [the walker] for

-12-

exercise". The complaint also states that his wheelchair has been returned. In short, plaintiff has failed plausibly to allege a violation of the MCRA through threats and intimidation.

**VI.     Plaintiff's Motion to Allow Service to Be Considered Complete**

Because the case will be dismissed, plaintiff's motion to allow service to be considered completed will be denied as moot.

**VII.    Plaintiff's Letters Regarding Safety Concerns**

Plaintiff has also filed several letters with the Court that recount his concern for his safety in prison and charge officers and other inmates with trying to hurt or kill him. The complaint does not include claims based upon such allegations and no motion has been filed regarding them, so this Court lacks jurisdiction over the purported safety issues. The Court did, however, address a letter to the Superintendent of Souza Baranowski Correctional Center, Steven Silva, with respect to the issue. Superintendent Silva responded in writing to assure the Court that plaintiff has been interviewed by Inner Perimeter Security on multiple occasions to investigate his safety concerns. That matter is deemed closed for the time being.

## ORDER

In accordance with the forgoing, plaintiff's motions to remand, to amend the motion to remand, to amend the complaint and to appoint counsel (Docket Nos. 10, 23, 24 and 56) are **DENIED**; plaintiff's motion to clarify the jurisdictional statement (Docket No. 13) and defendants' motion to dismiss (Docket No. 16) are **ALLOWED** and plaintiff's motion to consider service completed (Docket No. 25) is **DENIED as moot.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 8, 2017